IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
October 13, 2015 Session

**CODY HOLLAND v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Rhea County**
**No. 2012-CR-17      Thomas W. Graham, Judge**

_____

**No. E2015-00265-CCA-R3-PC – Filed January 8, 2016**

_____

The petitioner, Cody Holland, appeals the denial of post-conviction relief from his 2012 Rhea County Circuit Court guilty-pleaded conviction of rape, for which he received a sentence of 10 years. In this appeal, the petitioner contends that his guilty plea was not knowingly and voluntarily entered and that he was denied the effective assistance of counsel. Discerning no error, we affirm.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

Theodore A. Engel, III, Chattanooga, Tennessee, for the appellant, Cody Holland.

Herbert H. Slatery III, Attorney General and Reporter; Clarence E. Lutz, Assistant Attorney General; J. Michael Taylor, District Attorney General; and James W. Pope, III, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

On May 4, 2012, the petitioner entered a plea of guilty to one count of the Class B felony of rape, in exchange for a sentence of 10 years' incarceration. The transcript of the guilty plea colloquy contains the following factual summary of the offense:

> If the State went to trial in [the petitioner's] case they would be calling primarily . . . the alleged victim, who would testify that on August 21, 2010, here in Rhea County, she was at a party and [the petitioner] and another defendant, who has already pled in this case, were present. There was some

alcohol being drunk. She was taken off away from the party and [the petitioner] and the other individual, I can't remember his name, but they took turns holding her down and penetrating her sexually against her will. That would be the proof in this case. They also gave – [the petitioner] gave a written statement as well as the co-defendant did, admitting their involvement with this. [The victim] also identified them, and I think there was even some – a rape kit test that maybe tested positive as well. I can't remember about that, but anyway, that's the proof in the case, Your Honor.

The guilty plea hearing transcript evinces that the trial court conducted a thorough Tennessee Rule of Criminal Procedure 11(b) colloquy with the petitioner. In the colloquy, the trial judge confirmed the petitioner's knowledge of the nature and sentencing range of the charge, and the petitioner indicated his understanding of the potential sentencing. The petitioner also confirmed that he had consulted with trial counsel about his decision to plead guilty and that he freely and voluntarily made the decision to accept the plea agreement.

Following the entry of the plea agreement, the petitioner filed, pro se, a timely petition for post-conviction relief. Following the appointment of counsel and the amendment of the petition, the post-conviction court held an evidentiary hearing on August 13, 2014.

At the evidentiary hearing, trial counsel testified that she was employed with the public defender's office and had been appointed to represent the petitioner in juvenile court on August 24, 2010. Trial counsel recalled that, due to an evaluation of the petitioner ordered by the juvenile court, the petitioner's transfer hearing was postponed from March 2011 until January 2012. Trial counsel explained that she did not file a motion to suppress the petitioner's statements to law enforcement officers because the petitioner's mother was present at the sheriff's department at the time of questioning and because the petitioner had been advised of and waived his *Miranda* warnings.

Trial counsel advised the petitioner that the charge of aggravated rape was a Class A felony, which carried a sentence of 15 to 25 years at 100 percent service by operation of law. She also advised the petitioner, "on multiple occasions," of the requirements of the sexual offender registry, which would necessarily include a discussion of community supervision for life.

With respect to the juvenile court transfer hearing, trial counsel recalled that she did not call any witnesses to testify on the petitioner's behalf, stating that she and

the petitioner had "made the tactical decision" not to call the petitioner's mother or aunt to testify. When questioned about the rape test kit, trial counsel testified that the test results had not been returned from the crime laboratory at the time of the transfer hearing. She acknowledged that she took no action to "move the [S]tate along" on the results because "the DNA could potentially be moot, because not only did [the petitioner] give a written confession, so did his co-defendant, implicating both parties."

Trial counsel confirmed that the petitioner was 16 years old at the time of his arrest and 17 years of age at the time his case was transferred from juvenile court to the trial court. With respect to the investigation she conducted, trial counsel stated that she spoke with the petitioner and his parents, as well as the petitioner's counselor and Todd Wiggins, who had conducted the petitioner's psychosexual evaluation. Trial counsel testified that she had met with the petitioner "in excess of 12 times."

While the petitioner's case was pending in juvenile court, the petitioner was charged with "simple possession, also a violation of alcohol law, and possession of drug paraphernalia, and then an attempt to falsify a drug screen." Trial counsel confirmed that she "vigorously defend[ed]" the petitioner at the transfer hearing and believed the petitioner's state evaluation, which indicated amenability to correction, was extremely helpful. However, trial counsel stated that the juvenile court "was really concerned about the [petitioner's] additional charges."

Trial counsel testified that the petitioner's case was transferred to the trial court in January 2012, and, on February 23, 2012, the State offered to allow the petitioner to plead guilty to the lesser offense of rape in exchange for a 10-year sentence and dismissal of the other juvenile court charges. The State made no other offers to the petitioner and advised trial counsel in late March or early April that it "would pass this case one more time and then the offer was going to be off the table." Although she could not recall with any specificity her discussions with the petitioner regarding the consequences of a guilty plea, she testified that her practice was to offer a "broad spectrum of you have to meet the probation officer; you have to notify them of where you live; you have certain restrictions about where you live; who you can live with, that type thing." Trial counsel stated that she had made notes regarding her review with the petitioner of the sexual offender registry requirements but that she had no specific notes of a similar discussion of community supervision. She did, however, state that she routinely reviewed judgment forms with clients and that the petitioner's judgment form indicated "community supervision for life," which was signed by the petitioner.

Trial counsel advised the petitioner that, had he not pleaded guilty, the victim and the co-defendant would testify and that the petitioner's statement to law enforcement officers, in which he had confessed to raping the victim, would be used

against him. Trial counsel believed the State had "a very strong case" and that if the petitioner had proceeded to trial, he likely would have been convicted of aggravated rape.

Victoria Holland, the petitioner's mother, testified that she arrived at the sheriff's department approximately two hours after the petitioner had been arrested and was advised by someone wearing a badge "that they'd prefer that the parents not to be in there with [the petitioner], because he was a minor, if the parent was there more or less he wouldn't tell the truth." Ms. Holland denied that anyone from the public defender's office ever spoke with her about the events surrounding the petitioner's arrest. On cross-examination, Ms. Holland admitted that she had never requested to join her son during questioning and that she never objected to the department's statement that officers would prefer to speak to the petitioner alone.

The petitioner testified that, on the date he was brought to the sheriff's department for questioning, he was not advised of his rights and that officers "basically laid papers out in front of me and told me to sign them." With respect to his confession, the petitioner stated that the statement was handwritten by the investigating detective and provided to him to initial and sign. The petitioner stated that he was not given enough time to read the statement and that the statement was not read aloud to him. The petitioner asked trial counsel if the statement could be suppressed, and trial counsel replied that "there was no reasonable grounds to suppress that statement." The petitioner testified that trial counsel did not pursue the rape test kit because she believed the State had sufficient proof with the statements of the petitioner, the co-defendant, and the victim.

With respect to his statements at the guilty plea colloquy, the petitioner conceded that he had admitted his guilt but insisted that trial counsel never explained the community supervision requirements to him. The petitioner denied an understanding of the consequences of his guilty plea.

In the post-conviction court's order denying post-conviction relief, the court found that the petitioner failed to prove, by clear and convincing evidence, that he was deprived of the effective assistance of counsel or that his guilty plea was not knowingly and voluntarily made.

In this appeal, the petitioner reiterates his claims of ineffective assistance of counsel and an involuntary guilty plea, claiming that trial counsel performed deficiently by failing to advise him of the lifetime community supervision consequences of his guilty plea and by failing to file a motion to suppress his statement to law enforcement officers. The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. A post-conviction petitioner bears the burden of proving his or her factual allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the appellate court accords to the post-conviction court's findings of fact the weight of a jury verdict, and these findings are conclusive on appeal unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn. 1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

Before a petitioner will be granted post-conviction relief based upon a claim of ineffective assistance of counsel, the record must affirmatively establish, via facts clearly and convincingly established by the petitioner, that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and that counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When considering a claim of ineffective assistance of counsel, a reviewing court "begins with the strong presumption that counsel provided adequate assistance and used reasonable professional judgment to make all significant decisions," *Kendrick v. State*, 454 S.W.3d 450, 458 (Tenn. 2015) (citing *Strickland*, 466 U.S. at 689), and "[t]he petitioner bears the burden of overcoming this presumption," *id.* (citations omitted). We will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App. 1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

Apart from whether a guilty plea is the product of ineffective assistance of

counsel, it is invalid if otherwise made unknowingly or involuntarily. "Whether a plea was knowing and voluntary is an issue of constitutional dimension because '[t]he due process provision of the federal constitution requires that pleas of guilty be knowing and voluntary.'" *State v. Wilson*, 31 S.W.3d 189, 194 (Tenn. 2000) (quoting *Johnson v. State*, 834 S.W.2d 922, 923 (Tenn. 1992)). A plea "may not be the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats.'" *Wilson*, 31 S.W.3d at 195 (quoting *Boykin v. Alabama*, 395 U.S. 238, 242-43 (1969)); *see also State v. Mellon*, 118 S.W.3d 340, 345 (Tenn. 2003) (citing *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993)).

A claim of ineffective assistance of counsel is a mixed question of law and fact, *see Kendrick*, 454 S.W.3d at 457, as is a claim of involuntary guilty plea. *See Lane v. State*, 316 S.W.3d 555, 562 (Tenn. 2010); *State v. Honeycutt*, 54 S.W.3d 762, 766-67 (Tenn. 2001); *State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). When reviewing the application of law to the post-conviction court's factual findings, our review is de novo, and the post-conviction court's conclusions of law are given no presumption of correctness. *Kendrick*, 454 S.W.3d at 457; *Fields*, 40 S.W.3d at 457-58; *see also State v. England*, 19 S.W.3d 762, 766 (Tenn. 2000).

In our view, the record unquestionably supports the ruling of the post-conviction court. Even though trial counsel could not recall with any specificity reviewing the lifetime community supervision requirements with the petitioner, she was certain that she reviewed the requirements of the sexual offender registry with him, which typically included a discussion of community supervision. Moreover, trial counsel testified that it was her common practice to review judgment forms with her clients, which would have included the community supervision requirement. With respect to the motion to suppress, trial counsel testified that she saw no basis to file such a motion, testimony which was implicitly accredited by the post-conviction court, and we will not second-guess this reasonable trial strategy. *See Adkins*, 911 S.W.2d at 347. Furthermore, the record of the guilty-plea submission hearing and the implicitly accredited testimony of trial counsel – and the implicitly discredited testimony of the petitioner – evince the petitioner's understanding of the proceedings and his willingness to enter into the plea agreement in order to secure a reduced sentence. As such, we hold the petitioner has failed to prove by clear and convincing evidence that trial counsel's representation was deficient or prejudicial.

Accordingly, we affirm the judgment of the post-conviction court.

_____
JAMES CURWOOD WITT, JR., JUDGE